TANNER v. ECKHARDT et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. FRAUDULENT CONVEYANCE—PAYMENT OF DEBT TO WIFE.
    A husband may pay his wife any indebtedness he owes her, providing it is done without any design to cheat or defraud his other creditors.
    [Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Fraudulent Conveyances, §§ 243–288, 333–346.]

2. APPEAL—REFERENCE—REFEREE'S CONCLUSIONS.
    While, by statute, the question what constitutes an intention to defraud creditors by a transfer of property is a question of fact, the conclusions which a referee has deduced from the facts are not controlling on appeal.

3. FRAUDULENT CONVEYANCES—CREDITORS' LIEN—WIFE AS GRANTEE.
    A conveyance by a landowner to his wife, in order to prevent him from dissipating the property and making bad sales, was subject to any judgments which might be recovered against him on existing demands.

4. SAME—EFFECT.

A conveyance by a husband to his wife in payment of a debt due her could not be sustained as against judgment creditors on claims existing at the time of the conveyance, where the amount due the wife did not clearly appear.

Appeal from Judgment on Report of Referee.

·Action by Frank J. Tanner, as receiver of the property of John Eckhardt, against John Eckhardt and others, to set aside conveyances by said Eckhardt to the other defendants. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Willard P. Smith, for appellant.

Wilbur B. Grandison, for respondents.

SPRING, J. The action is brought by the receiver of judgment creditors of John Eckhardt, appointed in proceedings supplemental to execution to set aside conveyances and assignments of mortgages made by said judgment debtor to his wife, Margaretha, and his son, Isaac; the referee finding that the conveyances to the son, Isaac, were in trust for the wife. The evidence is not contained in the record, but the referee in his report has recited the facts very fully, and we get quite a clear conception of the salient features of the various transactions out of which the controversy has arisen. The judgments which are the foundation of the cause of action represent the balance or deficiency in each instance on a foreclosure sale. In June, 1891, the defendant John Eckhardt assigned· a bond and mortgage owned by him to one Reuling, guarantying the payment of.the same. The premises were subsequently sold on a. foreclosure of the mortgage, and the deficiency judgment against Eckhardt was entered in May, 1898. In June, 1892, the said Eckhardt gave two separate bonds to Charles J. Close, each for $2,500, and secured by a mortgage on the premises owned by Eckhardt, which were sold in a foreclosure action in 1900, and a deficiency remained on each judgment. The amount remaining unpaid on these three judgments was $3,379.93, and the receivership was extended to the proceeding on each judgment. In the early part of 1893 Eckhardt conveyed to his wife and son real estate in the city of Buffalo of the value of $190,000, and bonds and mortgages worth about $4,300. The real estate was mortgaged to the amount of about $80,-000, making the net value of the property transferred $114,300. He was personally liable for the payment of the incumbrances on the property, but the lands covered by each mortgage were deemed adequate to meet the mortgage indebtedness, and that was particularly so as to the mortgages which culminated in the judgments now represented by the appellant, although the margin above each of these liens was quite small. Eckhardt and his wife had long been married, and from 1870 to 1891 carried on a millinery and retail dry goods store in the city of Buffalo. The business was in the name of the husband, but the wife was the real manager and executive head, and there was an agreement between them that she

should have one-half of the profits accruing in form to him.   During 10 years of the time the business was prosecuted one Kauth was a copartner, and while that copartnership existed the understanding between Eckhardt and his wife was that each should be entitled to one-fourth of the profits.   The business was profitable, and in 1891 they sold the same.   The amount received therefor does not appear, but Mrs. Eckhardt obtained no part of the avails of the sale.   In December, 1892, they sold for $34,000 the real estate where the business was carried on.   Ten thousand dollars of the purchase price were paid to Mrs. Eckhardt, and she loaned the same to her husband a month later, and the entire indebtedness was outstanding at the time of the conveyances to her adverted to.   This real estate was purchased with money accruing from the store business.   Eckhardt invested unprofitably and against the protest of his son and wife.   In February, 1892, he was physically and mentally weak, and was induced to make the transfers now attacked "at the request and earnest solicitation of the defendants Margaretha and Isaac Eckhardt, in order to save the property, and to compensate Mrs. Eckhardt for her share of the profits of said William street business."   Thereafter Mrs. Eckhardt received the rents from this real estate, and they were expended for the family expenses and repairs upon the property.   It appears that in January, 1893, one Cieslinski had commenced an action against John Eckhardt to recover $1,259.04, and the answer was verified on the 23d day of February, 1893, which was two days after the acknowledgment of the first conveyance to his wife, and the other transfers followed quite closely.   The referee has set forth in detail certain facts unnecessary to enumerate, which might reasonably lead to the conclusion that Eckhardt personally knew nothing of this claim, and did not believe it was a valid demand against him.   It did, however, eventually result in a judgment, which was paid by the defendant Mrs. Eckhardt conveying to Cieslinski certain lots which had been conveyed to her by her husband in March, 1894.   There were two other claims, aggregating $217, against Eckhardt at the time of his transfers to his wife.   We do not attach the importance to these outstanding claims in this litigation which seems to have been given to them by the learned referee and the respective counsel.   The transfers covered property of large value, and it is hardly conceivable that people accustomed for many years to carry on business actively and successfully would dispose of property of so much value to avoid the payment of these three small demands, the validity of which was honestly doubted by the alleged debtor.   Their existence emphasizes the fact that the conveyances and transfers made by Eckhardt left him without sufficient property to meet his obligations, although he did not transfer every vestige of it to his wife. The referee finds that Mrs. Eckhardt and his son "knew the intent and purpose of said transfers," and "that the intent of said transfers was to deprive John Eckhardt of the power to deed or trade his property and consequently dissipate it, and to compensate Mrs. Eckhardt for her moneys due her under said agreement and loans made to John Eckhardt, and was made without intent to hinder, de-

lay, or defraud the parties represented by the plaintiff, and they were not hindered, delayed, or defrauded by said transfers."

There were therefore two inducements for the transfer of this property to his wife—one to prevent its dissipation, and the other to repay the debt which he owed her. As to the first motive which induced the transfer, however laudable it may have been in order to preserve the property from loss by reason of bad sales and unwise investments, it is no warrant for vesting the title absolutely in the wife to the deprivation of the creditors of the husband. The primary purpose of saving the property from being wasted and frittered away by the husband should have been to keep it for the benefit of his creditors or obligees. Considered by itself, therefore, the first reason makes the transfers voluntary, with no consideration to support them, and the wife would hold the property not absolutely, but for him, and subject to any judgment which might be recovered against him. The referee is probably right in finding that there was no actual intent by the parties to these transfers to defraud the creditors of Eckhardt. They may fairly have expected and believed that each parcel of real estate was ample to pay the incumbrances, with any probable accumulation of interest and taxes. The bonds, however, were personal obligations against Eckhardt. In the main he had given them originally, and he was personally liable for their payment at maturity. The equity of value was small in some of the parcels, notably in those of the existing judgment creditors. In the aspect of the case we are now considering, the transfers were without consideration. These defendants are in no situation to say they did not believe the property would ever be needed to meet his obligations. They took it to prevent its dissipation, and must be held accountable for it whenever in the mischances of investments Eckhardt is summoned to respond upon his bonds.

Regarding the other inducement which prompted the transfers, Eckhardt might pay his wife any indebtedness he owed her, providing it was done without any design to cheat or defraud his other creditors. Commercial Bank v. Sherwood, 162 N. Y. 310, 318, 56 N. E. 834; Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65; Seymour v. Wilson, 19 N. Y. 417, 421. It is to be observed at the outset that it is impossible, from the facts found at least, to distinguish any line of demarcation between that part of the property intended to be preserved to prevent its squandering and the portion designed to repay the indebtedness to Mrs. Eckhardt. Passing that, we are unable to determine the amount of that indebtedness. While Eckhardt, to insure the payment of the debt due his wife, could safely transfer property to her, its value ought not to be vastly in excess of the claim. The referee has found that the property transferred aggregated in value $114,300 above the incumbrances upon it. If her indebtedness, to illustrate, was only $10,000, she could not acquire by these conveyances real estate worth more than ten times that sum, to the exclusion of other creditors of Eckhardt. The right in one to convey property to satisfy a debt must be construed reasonably when it operates to leave other obligations un-

paid. We appreciate that what constitutes an intention to hinder, delay, and defraud creditors by a transfer of property in this class of cases is made a question of fact by statute. We have endeavored to keep within the compass of the facts found by the referee, and there is no other source to obtain them, for they compose the record before us. The conclusions which he has deduced from the facts are not controlling upon us. Robert et al. v. Vietor et al., 130 N. Y. 585–600, 29 N. E. 1025; Coleman v. Burr et al., 93 N. Y. 17–31, 45 Am. Rep. 160. They merely indicate the judgment of the referee. The transaction, as we interpret it, carries its own condemnation. Property in value over $100,000 was transferred to the wife and son. The incentive was, first, to preserve it from dissipation, and, second, to insure the wife the payment of a just claim, the result of a lifetime of hoarding. The amount of her claim does not appear. The agreement upon which it is founded, according to the referee, was "not accurately formulated." It is indefinite and uncertain. Judgment creditors on claims subsisting against the husband at the time of the transfers are now seeking to obtain satisfaction of their judgments out of this property. Before it can be held against them, there must be something more tangible than appears in this record establishing the validity and extent of her indebtedness. If upon a retrial the proof should develop that she has a just definite claim, that the transfers to her were honest, and without any intent to defraud the judgment creditors of her husband, it may be entirely proper to establish her debt as a lien upon the real estate conveyed, and devote said property to the payment of the judgments in suit subject to such lien. We, however, are too much in the dark as to the character and amount of such claims to pass upon that question. The judgment should be reversed upon the law and facts, and a new trial ordered, with costs to appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.